The next case we're arguing is 22-0245 Massimo v. Sotera. Good morning. May it please the Court. No waiver issues in this case, right? I hope not. Long I.D.S., though. A long I.D.S. I'd like to address three issues today. The first two are claim construction issues, reviewed de novo. And the third is a manifest failure by the Board to assess a critical argument with respect to the feasibility of a proposed combination. I'd like to begin by addressing the claim limitation that's been identified as one I in the record. Trigger a second alarm. Let me ask you a preliminary question. Is it your position that if the Board agrees with the, if the Court agrees with the Board's claim construction of based on and predetermined, that BAC does render the claims at issue obvious? There is also an issue of second alarm threshold, which is whether what BAC identified, sorry, what the Board identified as the second alarm threshold in BAC, whether that is, in fact, a second alarm threshold. And that's exactly where I'd like to start, which is that the limitation is triggering a second alarm threshold based on exceed, sorry, triggering a second alarm based on exceeding a second alarm threshold. And if the Court agrees with Massimo's proposed construction, the Board made it clear at appendix page 17 that there would be no need for remand. The Court could simply reverse because the Board held patent owner's construction would differentiate claim one from BAC. And that's why I'd like to start there. The Board failed by applying, by failing to apply Phillips, and that the Board conceded that Massimo was correct, that the 218 patent does not disclose any embodiment in which the measured oxygen values exceed an additional and more extreme or lower alarm threshold than the alarm threshold AT, the adaptive threshold, to trigger an alarm. Let's just start with the first question on this term based on. Are you reading based on to be based exclusively on or based only on? No, we are not. Okay, so that opens up limitation one I to include other possible conditions that also must be met in order to trigger the alarm? That's correct. For example, I believe it's claim five. Right. The time delay. The time delay, exactly. And that is consistent with the plain meaning of based on, which is that you could have it based on different criteria, A, B, C. But if it is based on exceeding a threshold A, then it can't also be based on exceeding some other threshold A prime, because then it's based on exceeding A prime. And when the limitation is read together, triggering an alarm based on exceeding a second alarm threshold, the specification makes clear that that's referring to the most extreme value. And the board conceded that every single time in the specification that there's a reference. What if we don't know that? What if we don't necessarily know from reading the patent that it has to be the most extreme value? And when we look at the prior art reference, we see that, okay, you have to exceed threshold 314 first in order to create limit 316. 316 doesn't exist until you meet and exceed threshold 314. And so in that way, 314 is a necessary condition before you're going to trigger that alarm, which only gets met after you meet condition 316. So why isn't that just a reasonable way of matching up what just happens to be happening in this prior art reference to understanding this claim limitation 1I, which we agree on, that can be open to other conditions beyond the second alarm threshold being met? And that's exactly where I believe the board got hung up, which is the board construed it as a condition precedent, simply something that needs to happen before. And that's not what the limitation says. It's not the plain meaning of triggering an alarm based on exceeding a second alarm threshold. That doesn't mean just something that has to happen before. There has to be a causal connection. And in particular, it has to be exceeding that threshold. What's your source for this plain meaning? You're describing to us plain meaning. On what basis? So in the record, there was both a dictionary citation of base on as well as dictionary definitions of threshold, although I think the far more important consideration is how the term was used in the patent, and that that's the basis of Phillips and claim construction, is how these terms would be read in the context of the patent. And the patent uses the term threshold or alarm threshold 40 times. And every single time in the specification, maybe it's 39 approximately, and every single time as the board conceded and as Sotera conceded, it is referring to the most extreme value that needs to be exceeded in order to trigger the alarm. And you could also have a delay where it has to exceed that value for a certain period of time. But there is nothing disclosed in this specification where you have to exceed a threshold value and then some more extreme threshold value. And so really with the most important question being how is this phrase used, how is this term used in the patent specification, there is no doubt about how it's used in the patent specification. Right, but there's nothing lexicographic in the specification that says when we say the term second alarm threshold, we mean the most extreme value that can be met in order to trigger the alarm. There is nothing that explicit. That is correct. And there are embodiments that are read out on your construction, right? No. No. Every single embodiment, and the board specifically noted that, the patent does not disclose any embodiment. Can you give me a page in the board? Yes, that's Appendix 25. Okay. And the board further conceded that the same is true of the fixed alarm thresholds D sub L and N D sub L of the prior art system illustrated in Figure 1 of the 218 patent. Same citation, Appendix 25. So the board recognized that if one looks at the patent, this term alarm threshold is only used in one way. And it's used consistently and repeatedly in that one way when referring to the prior art and to the claimed invention. And so Tara further conceded that, and that's in their brief at page 28. And the quote is, the patent specification does not disclose an embodiment wherein the processor must determine that the measured SPO2 value exceeds an additional and more extreme threshold. And so, Your Honor, identify the issue correctly, but the positions are the reverse, which is that there is no embodiment or description of the prior art under Sotera and the board's proposed construction, whereas everything is consistent with Massimo's proposed construction. In addition, simply, there's only one place where the term based on appears in the specification. It's in the abstract. And if the Court were to look at that, it further supports the argument, which is that it is used in the abstract to describe the first threshold, the first alarm threshold. And it highlights an important point, which is that even there, it's based on exceeding a first alarm threshold, and it's tied to triggering a first alarm. And that makes sense, because in every case, the alarm threshold is tied to that specific alarm. And if it was simply a condition precedent, then triggering the second alarm would also be based on, for example, exceeding the first threshold, because that's simply something that has to happen first. The second claim construction issue, I would, unless the Court has additional questions about that. The second claim construction issue I would like to address is predetermined. And, sorry, before I do that, just to be clear, that first claim construction issue, in addition to not needing to be remanded, it addresses all the claims, because it addresses the Bach reference, which is part of ground one and ground two. So if the Court agrees with our construction, there would be a reversal of all claims, all grounds. The predetermined term is with respect to claims seven, nine, and 18. Again, the Board erred in how it construed this term. Within the claim itself, element 1D uses the word determine to refer to a value. And I perhaps should back up, as you may recall, the disagreement is, does predetermined mean that the value must be predetermined, or that a formula for arriving at the value needs to be predetermined? What they call calculation. Calculation, yes, exactly. And if you look at how it's used in the claims, element 1D says, determine oxygen saturation values. So there we have the affirmative determine tied to values. Then we have claims four and 15, which use the word predetermined in describing the lower limit. That's the one that automatically assesses, triggers an alarm. And those claims recite where the lower limit is predetermined. Could you address the Board's reasoning? I mean, that's the thing I'm most interested in. I understand the Board's reasoning. They said what's going on here is an adaptive threshold. We know from claim one that in order to get the second alarm threshold, you're replacing the first alarm threshold. And so at any given time, there's just one alarm threshold that is varying due to this adaptive threshold. I don't recall you responding to this. But assuming that's right, that there's an adaptive threshold in the claim, then what we're dealing with is some kind of dynamic threshold, not some preset fixed set of thresholds, which is, as I understand it, your argument. We know what your arguments are. Can you respond to the Board's reasoning? Certainly. The Board was simply confusing the first alarm threshold and the second alarm threshold in that the patent discloses different embodiments. In all of them, the second alarm threshold, at least what's claimed, the adaptive threshold, AT, is always a variable or adaptive threshold. But the first alarm threshold can either be variable or fixed. And the limitations in claims 7, 9, and 18 are referring to the embodiments where the first alarm threshold is fixed, predetermined before, and then the second alarm threshold is what varies. Or there could be embodiments where both are variable. And in the independent claims, claim 1, it covers where the first alarm threshold is variable or fixed. And then in the dependent claims 7, 9, and 18, that's where the first alarm threshold is fixed and the second alarm threshold is variable or adaptive. And so the Board simply got that wrong. How do we know that is what I'm trying to understand. Why isn't claim 7's predetermined language open to the idea that the first alarm threshold, like the second alarm threshold, is open to being a variable threshold? Well, both from how it's used in the other claims, which is that in claims 4 and 15, the exact same word predetermined is used with regard to the lower limit, the absolute fail-safe. And it specifically says the lower limit is predetermined. And Soterra concedes that. And so we have a situation where there's no doubt how the claims used determine. There's no doubt how the claims used predetermined, at least in some of the claims, and this assessment that somehow, but in other claims when it uses predetermined, it somehow meant something else. And there's a pretty strong presumption that claim terms mean the same thing throughout the claims. And there's no reason to give predetermined a different meaning in 7, 9, and 18. Yes, I realize that. I do want to save a minute. And so simply the final point was that there was, with regard to the ground two combination of adding Worley to Bach, they made it very clear that they had changed their argument to not adding Worley to Bach, but to removing Bach's 316, which is the alarm limit, and then introducing Worley's delay.  And therefore, the embodiment would be completely inoperative and neither the board nor Soterra has ever explained how that would possibly work. Thank you. Hello again, Your Honors. I'm going to limit my introductory comments to the two issues that you talked about in oral argument here, the claim constructions. I'm happy to answer any questions about the combination of Worley and Bach, of course. The triggering based on language, at times Mossimo complains about how the board handled based on, but they admit that based on is open to other conditions. They admit that Claim 5 contemplates another condition, which is a time delay. So Claim 1 is open-ended. They concede that. This court's precedent on negative limitations is exacting. They have to be their own lexicographer. There has to be a clear disavowal. None of that exists. What they're trying to do is add a negative limitation in, and I don't blame them. They're trying to add a negative limitation in that carves around Bach, but leaves Claim 1 open to any other condition under the sun other than Bach. This court's precedent doesn't allow that. When we turn to the predetermined issue... I guess their argument, though, is that when the claim says second alarm threshold, that's the limit. That is the measured value that's going to trigger the alarm. And, of course, you can add other conditions, but they've already defined in the claim itself what is the measured value that's going to be the triggering event or participate in the triggering event. So it would be illogical to start creating other secret thresholds beyond the decided second alarm threshold. So instead of it being a negative limitation, it's more like a self-defining limitation as to what is the criteria for a given parameter measurement before you trigger the alarm. So that's what we have to think through, and I'd like to hear your input on that. The starting point for any claim construction analysis would be the claim language, and the claim language doesn't carve out that exception. When you look to the specification, the specification contemplates other conditions, such as a time delay. Our expert Bergeron expressly testified, as adopted by the board, that they keep calling it more extreme threshold than Bach, that 316 alarm limit. It's a nuisance value eliminator. So in Bach, when you cross 314, it triggers, right? I mean, it sets the alarm limit 316. So the processor is analyzing, has the patient data fallen below 314? When it drops below 314, as Bergeron testified, and Yanuelos as well, it's an effective time delay because it's going to give it a little more room to drop. If the transient drops too far, it sounds an alarm. If it doesn't, it gives it time. So here's 314, 316 decays to zero, and all it does is give, just like Worley, just like 218, it gives the transient signal time to go back above 314 to eliminate nuisance value alarms. So Worley shows one time, you know, time nuisance value eliminator, a time delay. 218 shows that. Bach shows it just in a different way. So the condition that Bach has is just 316 decays to zero. So it's just another condition that the language of Claim 1 allows for. Does that answer the question? I understand your answer. Okay, well, I know that means you don't just agree with me, but, I mean, it's... I didn't say that either. All right, fair enough. I'm hoping you agree with me, but... Yes, sir. So, and I'm happy to answer more questions on this, or I was in my intro, and I could go back to predetermined. Go back to predetermined. So on predetermined, the Board found below that the thresholds in Claim 1 are adaptive thresholds. That was not disputed below, that the thresholds are adaptive. They...Mossimo, I think, disputes it on appeal, but they did not raise that argument below. We cited to the spec, it's Column 4, it's like lines 30 to 50, but what the 218 patent explains is that you have the prior art, Level 1 and Level 2. Those were fixed thresholds in the prior art. In the 218 patent, all the thresholds in the claim are adaptive, and they model off of L1 and L2, the prior art. So if you read the spec at Column 4, it says that L1... Is there anything in the spec that shows an example where the first one threshold is not adaptive, but it's fixed? No, there is none. Not to our knowledge. There's none that has a set value? Not to our knowledge, no. Everything in the... I mean, the whole point of the patent, they criticize fixed thresholds. They say that fixed thresholds don't account for baseline drift. So if a normal patient... Their invention and Bach's invention was adaptive thresholds. They both are. 218 and Bach are both adaptive thresholds. And it accounts for just a physiological phenomenon in patients, right? I mean, if I have... A normal patient has an SpO2 value of 98, but somebody else has one at 96, when they drop, you're going to be ringing alarms when they shouldn't be. So what both 218 and Bach account for is baseline drift. And so they measure the patient's actual value. That's the baseline. And then they drop the threshold lower to account for that. But the closer that that patient's data gets to the lower limit, where it's dangerous, we keep decreasing that adaptive threshold. So the threshold in... And the way you know in the claim language that it covers it is that the second adaptive threshold replaces the first. That's the exact language of Claim 1. And as I said below, the board found that Claim 1 only covers adaptive thresholds, Threshold 1 and Threshold 2, and the first replaces the second. That's the claim language. If you look at... And we cited in our briefs, it's in Column 4, it says specifically that in the case of adaptive thresholds, you can't use a fixed value. Turning to an argument that I found interesting, claims 4, 10, and 15 refer to a predetermined value for the lower limit. The lower limit is you've got a serious problem. If you drop below that, there's no delaying. It's just you're sounding an alarm. In those claims, it says predetermined, and it's a value. So when Massimo used claim language in 4, 10, and 15, and they wanted to say predetermined meant value, those claims say value. When you look at 7, 9, and 18, it says predetermined, it doesn't use value. And when you tie that into the spec, when you tie it into the spec, the spec says for adaptive thresholds, you cannot use a fixed value. It would, of course, defeat the whole point of the invention. I don't have anything else unless you do. Thank you. Thank you, Your Honor. We'll restore two minutes, everybody. Counsel mentioned that when in Bach it exceeds 3, 14, it triggers. What he omitted was what is triggered. And what both Zotero and the board recognized is that to the extent it triggers anything, it triggers the creation or establishment of lower limit 3, 16. It does not trigger an alarm. And that's why when the limitation is read together and construed correctly, the board recognized, if construed that way, it's distinguished from Bach. With regard to the argument that Bach discloses an effective time delay, it's really the same thing. If that were true, Zotero would not have tried to make a three-way combination and add Worley. They would have just tried to rely on the time delay in Bach. There is no time delay in Bach. And we know that because it's undisputed that if the level drops a little bit below 3, 14 and then stays there for a really long time, even an infinite amount of time, no alarm is ever triggered. It's not a time delay. It's requiring a more extreme value. Counsel mentioned that the second adaptive threshold replaces the first, is the claim language. That's not. I think it was corrected later, but I just want to make sure. There's no reference in the claims to the first alarm threshold being an adaptive threshold. The claim language is alarm threshold, and that consistently ties the value being exceeded to the alarm being triggered. Are you saying that Claim 1 doesn't encompass an adaptive threshold? No, Claim 1 does encompass. It's that Claim 1, particularly for the first threshold, it can be either fixed or variable, whereas the second one is variable. And then finally, the statement characterizing claims 4, et cetera, I believe was also incorrect. There's two limitations there. The first one is wherein the lower limit is predetermined and corresponds to a minimum parameter value for oxygen saturation. So I believe the argument was correct, that in each case predetermined should be used at the same time. Thank you. Thank both sides. The case is submitted.